IN RE NANTZ

[177 N.C. App. 33 (2006)]

———————————

IN RE: BETTY NANTZ

No. COA05-965

(Filed 4 April 2006)

**1. Appeal and Error— preservation of issues—appeal from board to superior court—sufficiency of findings and conclusions raised**

An assignment of error was properly preserved for review where respondent filed in superior court a petition for judicial review of a decision of the North Carolina Appraisal Board revoking her certification as a real estate appraiser. Although the State asserts that the issue of permanent revocation was not raised in respondent's petition, an appeal from a final judgment may present the question of whether the judgment is supported by the findings and conclusions.

**2. Occupations— real estate appraisal board—sanctions—findings and conclusions**

The plain language of N.C.G.S. § 93E-1-12 is clear and does not require the North Carolina Appraisal Board to specifically make findings of fact and conclusions of law to support a particular penalty or sanction against a real estate appraiser.

IN RE NANTZ

[177 N.C. App. 33 (2006)]

### 3. Occupations— real estate appraisal board—power to permanently revoke certification

The plain and ordinary meaning of "revoke" and "suspend" in N.C.G.S. § 93E-1-12 shows a legislative intent to give the North Carolina Appraisal Board the power to permanently revoke a real estate appraiser's certification.

### 4. Real Estate— appraisal—standards violated—findings sufficient

Sufficient findings supported the North Carolina Appraisal Board's conclusion that its standards were violated by a real estate appraiser in making misleading reports, omitting essential information, and not indicating hypothetical conditions in her report. Although there was a clerical error in identifying one of the standards, that error was harmless.

### 5. Real Estate— appraisal—communication in fraudulent or misleading manner

Findings by the North Carolina Appraisal Board supported the conclusion that real estate appraisal results were communicated in a fraudulent or misleading manner. Despite respondent's argument that findings of intent to deceive are required, the Board's ethics rule is violated when the appraiser communicates the results in a fraudulent or misleading manner.

### 6. Appeal and Error— issue first raised on appeal—not heard

An argument concerning the sufficiency of the North Carolina Appraisal Board's notice of alleged violations was dismissed where the issue was raised for the first time on appeal.

Appeal by respondent from order entered 20 April 2005 by Judge Ronald K. Payne in Cabarrus County Superior Court. Heard in the Court of Appeals 9 March 2006.

*Attorney General Roy Cooper, by Assistant Attorney General Roberta Ouellette, for petitioner-appellee North Carolina Appraisal Board.*

*Garlitz & Williamson, PLLC, by Thomas D. Garlitz, for respondent-appellant.*

IN RE NANTZ

[177 N.C. App. 33 (2006)]

TYSON, Judge.

Betty Nantz ("Nantz") appeals from order entered affirming the North Carolina Appraisal Board's ("the Board") decision to revoke her certification as a real estate appraiser. We affirm.

## I. Background

Nantz has been preparing real estate appraisals since the 1960s. When North Carolina required appraisers to be certified, she was certified as a residential appraiser in 1990 and as a general appraiser in 1992. Nantz prepared appraisals in Cabarrus and surrounding counties. The Board received four complaints against Nantz. A hearing on all four complaints was held on 20 May 2004 and 15 June 2004. The Board found as follows:

### A. First Complaint

Nantz performed an appraisal of property located at 21 Cherry Street in Wadesboro, and estimated the indicated value of the property at $72,000.00 as of 23 May 2001. At the time of the appraisal, the public tax records identified the owner of the property as Leroy Lookabill, Jr. ("Lookabill"). Nantz stated in her appraisal report, "To my knowledge there have been no agreements, options, listings or prior sales of the subject or the comparables." Public records indicate Lookabill acquired the property in September 2000. This sale was neither mentioned nor analyzed in the appraisal report. On the first page of the appraisal report, Nantz stated the sales price as "N/A." Nantz stated at the hearing that "N/A" meant "Note Addendum." However, she used the same notation several other times in her appraisal reports and none of those items were addressed in an addendum.

Nantz's work file contained an MLS listing sheet indicating the property was listed for sale for $52,600.00 at the time of the appraisal report. Nantz failed to address or note this listing in her appraisal. The property sold on 29 June 2001 for $72,000.00. Nantz chose four sales as comparable to the subject property. Three of those sales were from superior locations than the subject property, yet Nantz made no adjustments for those differences. The Board also found more comparable sales were available that indicated a lower value for the property.

### B. Second Complaint

Nantz performed an appraisal for property located at 12 Magnolia Street in Wadesboro, which she estimated the property's indicated

IN RE NANTZ

[177 N.C. App. 33 (2006)]

value at $80,000.00 as of 27 December 2001. At the time of the appraisal, public tax records identified the owner of the property as Lewis and Brownette Moore. Nantz's work file contained an MLS listing sheet for the property indicating it was listed for sale for $59,000.00 at the time of the appraisal. Nantz listed the sales price on the first page of her report as "N/A." On the second page of the report, Nantz states, "I have no knowledge other than the above pertaining to any sales, contracts or listings." In an addendum to the report, Nantz states, "Subject property is currently listed at $59,000.00 and has an offer to purchase for $55,000.00." The property did not sell after the appraisal report.

The Board found Nantz chose three sales as comparable to the subject property. All three of these sales were from areas that were superior to the subject property and Nantz made negative $4,000.00 adjustments for each of the sales for location. The Board found these adjustments were inadequate to address the differences in location between the comparable sales and the subject property and that more comparable sales were available, which indicated a lower value for the property. On the location map included in the appraisal report, Nantz showed the property being located within the city limits of Wadesboro when, in fact, it was not.

## C. Third Complaint

Nantz performed an appraisal of property located at 52 S. Salisbury Street in Wadesboro, which she indicated a value of $102,000.00 as of 25 October 2000. At the time of the appraisal, the public tax records identified the owner of the property as Gail R. Ponds ("Ponds"). On the first page of the report, Nantz states the sales price as "N/A." Nantz left blank the section on the second page of the appraisal report regarding any current agreement of sale, option, or listing of the property. The property had sold to Ponds on 27 April 2000 for $26,000.00. This sale was not mentioned in Nantz's appraisal report. Ponds sold the property in January 2001 to Sophia Ingram ("Ingram") for $102,000.00. Ingram subsequently obtained a deed of trust on the property in the amount of $91,800.00.

Nantz used three comparable sales in her appraisal report. Although the subject property was located in a mixed-use area, all comparable sales Nantz chose were located in residential neighborhoods. The Board found the comparable residential houses were superior in quality and condition to the subject property, but Nantz made no adjustments to account for those differences. The Board

also found more comparable sales were available that would have indicated a lower value for the property.

### D.  Fourth Complaint

Nantz performed an appraisal of the property located at 617 Pee Dee Avenue in Albemarle, in which she indicated a value of the property of $210,000.00 as of 19 March 2001. Nantz identified the owner of the property as Ted C. Russell ("Russell"). At the time of the appraisal, the public records identified the owner of the property as the Bank of New York. The Bank of New York had acquired the property by a Trustee's Deed on 9 May 2000 for the sum of $98,600.00. At the time of the appraisal, the property was listed for sale for $90,000.00. On the first page of her report, Nantz stated the sales price as "N/A."

Russell acquired the property on 30 May 2001 for $90,000.00. Russell sold the property to Marilyn Turner ("Turner") on 27 June 2001 for $210,000.00. Turner subsequently obtained a loan on the property for $189,000.00, which later went into default and foreclosure. Nantz stated in the appraisal report that "To my knowledge there are no agreements of sale, options, listing [sic] of the subject or prior sales within one year of the date of the appraisal." Nantz testified she knew of the 9 May 2000 transfer for $98,600.00, but failed to note it in her appraisal report.

Nantz also failed to indicate in her appraisal report that the property was offered for a sale price of approximately $120,000.00 less than her appraised value and she failed to state and analyze the sales history of the property. Nantz asserted the improvements on the property contained 2,435 square feet. This conclusion included the square footage of a basement she determined was finished. The Board found the basement area was not finished, was below grade, should not have been included as finished floor area, and the correct square footage was 2,067.

The Board also found the comparable sales Nantz chose were all much larger and newer than the subject property and superior in location and condition. Nantz's appraisal contained no adjustments for these differences. The Board further found that more comparable sales were available that indicated a much lower value for the property.

The Board adjudged Nantz guilty of violating rules of the Uniform Standards of Professional Appraisal Practice ("USPAP") for real

estate appraisers. The Board permanently revoked Nantz's certification pursuant to N.C. Gen. Stat. § 93E-1-12(a)(9). This statute permits the Board to revoke an appraiser's license, certificate, or registration if the appraiser is found to have violated any of the standards of practice for real estate appraisers or any other rule promulgated by the Board.

Nantz filed a Petition for Judicial Review in Cabarrus County Superior Court seeking review of the Board's decision. On 20 April 2005, the trial court affirmed the Board's decision. Nantz appeals.

## II. Issues

Nantz argues the trial court erred by: (1) affirming the Board's decision to permanently revoke her certification as an appraiser; (2) upholding the Board's conclusion that she violated USPAP Standards Rules 1-2(f), 1-4(b), and 2-1; (3) upholding the Board's conclusion that she violated the USPAP ethics rule by communicating her appraisal results in a "fraudulent manner;" and (4) upholding the Board's conclusion that she violated N.C. Gen. Stat. §§ 93E-1-12(a)(2), 93E-1-12(a)(8), 93E-1-12(a)(10), and 93E-1-12(a)(11).

## III. Standard of Review

> When the Agency decision is on review before the superior court judge, his consideration of the case is that of an appellate court. *In re Faulkner*, 38 N.C. App. 222, 247 S.E.2d 668 (1978). The reviewing court, both trial and appellate, "while obligated to consider evidence of record that detracts from the administrative ruling, is not free to weigh all of the evidence and reach its own conclusion on the merits." *Savings and Loan Assoc. v. Savings and Loan Comm.*, 43 N.C. App. 493, 497, 259 S.E.2d 373, 376 (1979).

*Little v. Board of Dental Examiners*, 64 N.C. App. 67, 69, 306 S.E.2d 534, 536 (1983).

In *N.C. State Bar v. Talford*, our Supreme Court held a review under the whole record test requires three determinations whether: (1) there is adequate evidence to support the agency's findings of fact; (2) the findings of fact adequately support the conclusions of law; and (3) the findings of fact and conclusions of law support the agency's ultimate decision. 356 N.C. 626, 634, 576 S.E.2d 305, 311 (2003). "[I]n reaching its decision, the reviewing court is prohibited from replacing the Agency's findings of fact with its own judgment of how credi-

ble, or incredible, the testimony appears to them to be, so long as substantial evidence of those findings exist in the whole record." *Little*, 64 N.C. App. at 69, 306 S.E.2d at 536 (citation omitted). Questions of statutory interpretation and law are reviewed *de novo. Department of Transp. v. Charlotte Area Mfd. Housing, Inc.*, 160 N.C. App. 461, 464, 586 S.E.2d 780, 782 (2003) (citations omitted).

## IV. Revocation of Nantz's Certification

Nantz argues the trial court erred by affirming the Board's decision to "permanently" revoke her certification. Nantz contends the Board: (1) failed to make findings of fact or conclusions of law to explain how it decided to impose such penalty; and (2) exceeded its authority in "permanently" revoking her certification. We disagree.

### A. Preservation of Error

[1] The State argues Nantz failed to properly preserve this assignment of error for appellate review. Nantz filed a petition for judicial review of the Board's decision in Cabarrus County Superior Court. The State asserts the issue of permanent revocation was not raised in Nantz's petition. "In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C.R. App. 10(b)(1) (2005). "[A]n appeal duly taken from a final judgment may present for review, if properly raised in the brief, the question of whether the judgment is supported by the findings of fact and conclusions of law." *Anderson Chevrolet/Olds v. Higgins*, 57 N.C. App. 650, 653, 292 S.E.2d 159, 161 (1982). The State's argument is overruled.

### B. Findings of Fact and Conclusions of Law Regarding Selection of the Penalty

[2] N.C. Gen. Stat. § 93E-1-12(a) (2005) provides the Board is authorized to "suspend or revoke" the certification of a real estate appraiser if the Board finds the appraiser has engaged in activities enumerated in and proscribed by the statute. The Board's decision cited fourteen conclusions of law, which set forth specific standards and laws Nantz purportedly violated. Nantz does not address any portion of the statute where the Board is required to make findings of fact or conclusions of law to support the Board's selection of the penalty or sanction.

The primary rule of statutory construction is that the intent of the legislature controls the interpretation of a statute. The foremost task in statutory interpretation is to determine legislative intent while giving the language of the statute its natural and ordinary meaning unless the context requires otherwise. Where the statutory language is clear and unambiguous, the Court does not engage in judicial construction but must apply the statute to give effect to the plain and definite meaning of the language.

*Carolina Power & Light Co. v. The City of Asheville*, 358 N.C. 512, 518, 597 S.E.2d 717, 722 (2004) (internal citations and quotations omitted).

The plain language of N.C. Gen. Stat. § 93E-1-12 is clear, and it does not require the Board to specifically make findings of fact and conclusions of law to support a particular penalty or sanction. We decline to judicially impose this requirement on the Board when the legislature did not include it in the language of the statute. *See Correll v. Division of Social Services*, 332 N.C. 141, 145, 418 S.E.2d 232, 235 (1992) ("The wording of N.C.G.S. § 108A-55 is clear, and it does not include a requirement that a Medicaid applicant 'own' his or her primary place of residence before receiving the advantage of the statute's 'contiguous property' exclusion.").

## C.  Permanent Revocation

[3] The plain and definite meaning of the language contained in N.C. Gen. Stat. § 93E-1-12 determines whether the Board has the authority to "permanently revoke" Nantz's certification. The statute provides, "The Board may *suspend or revoke* the registration, license, or certificate granted to any person under the provisions of this Chapter or reprimand any registered trainee, licensee, or certificate holder" if the Board finds the appraiser to have committed any of the enumerated violations. N.C. Gen. Stat. § 93E-1-12(a).

The American Heritage Dictionary defines "revoke" as "to void or annul by recalling, withdrawing, or reversing." *The American Heritage Dictionary of the English Language* (4th ed. 2000). "Suspend" is defined as "to bar for a period from a privilege, office, or position, usually as a punishment." *The American Heritage Dictionary of the English Language* 1225 (4th ed. 2000). The plain and ordinary meanings of these words show the legislature's intent that "revoke" in the statute means the Board has the power to permanently revoke the certification. If "revoke" meant a period of time less than permanent, the word "suspend" would not have been

included in the statute. *See Builders, Inc. v. City of Winston-Salem*, 302 N.C. 550, 556, 276 S.E.2d 443, 447 (1981) ("It is presumed that the legislature intended each portion to be given full effect and did not intend any provision to be mere surplusage.").

### V. The Board's Conclusions of Law

**[4]** Nantz argues the trial court erred in upholding the Board's conclusions of law that Nantz violated USPAP Rules 1-2(f), 1-4(b), and 2-1. We disagree.

We review whether substantial evidence supports the Board's findings and if those findings support its conclusions of law. *Talford*, 356 N.C. at 634, 576 S.E.2d at 311. The Board concluded:

> 7. The Respondent is adjudged to have violated Standards Rule 1-2(f) of USPAP when she failed to identify the scope of work necessary to complete the assignment. The Respondent excluded certain information from her appraisal that was relevant to her determination of the appraised value. She allowed the assignment conditions and/or other factors to limit the extent of research or analysis to such a degree that the resulting opinions and conclusions developed were not credible in the context of the intended use of the appraisal.

USPAP Standards Rule 1-2(f) requires an appraiser to "identify the scope of work necessary to complete the assignment." USPAP defines "scope of work" as "the amount and type of information researched and the analysis applied in an assignment." An appraiser should identify the appropriate scope of work and determine the appropriate research the particular assignment and property demands.

The Board found as fact:

> 4. Respondent knowingly made omissions and false statements concerning the identification of the property owner and the marketing and sales history of the subject properties, all of which made the property appear more favorable and provided artificial support for the inflated value placed on the subject.

This finding supports the Board's conclusion that Nantz violated Standards Rule 1-2(f) of USPAP.

Nantz argues the Board's conclusion that she violated Standards Rule 1-4(b) of USPAP was not supported by any findings of fact. The Board concluded:

8. The Respondent is adjudged to have violated Standards Rule 1-4(a) and (b) of USPAP when she failed to collect, verify and analyze all information applicable to the appraisal problem, given the scope of work identified in accordance with Standards Rule 1-2(f) of USPAP. In applying a sales comparison approach, the respondent failed to analyze comparable sales data that were available to indicate a value conclusion. She selectively chose the comparable sales based on the sales prices, which led to an inflated value for the subject properties.

USPAP Standards Rule 1-4 provides:

In developing a real property appraisal, an appraiser must collect, verify, and analyze all information applicable to the appraisal problem, given the scope of work identified in accordance with Standards Rule 1-2(f).

(a) When a sales comparison approach is applicable, an appraiser must analyze such comparable sales data as are available to indicate a value conclusion.

(b) When a cost approach is applicable, an appraiser must:

(i) develop an opinion of site value by an appropriate appraisal method or technique;

(ii) analyze such comparable cost data as are available to estimate the cost new of the improvements (if any); and

(iii) analyze such comparable data as are available to estimate the difference between the cost new and the present worth of the improvements (accrued depreciation).

Nantz does not argue that no findings of fact support the conclusion that she violated USPAP Standards Rule 1-4(a). She argues no findings of fact support a conclusion that she violated Rule 1-4(b). As the Board concedes, Nantz is correct. The reference to Rule 1-4(b) in the Board's conclusion appears to be a clerical mistake. We find this clerical error to be harmless.

Nantz argues the Board's conclusion that she violated USPAP Standards Rule 2-1(b) and (c) is not supported by any evidence. USPAP Standards Rule 2-1 provides:

Each written or oral real property appraisal report must:

. . . .

(b)  contain sufficient information to enable the intended users of the appraisal to understand the report properly; and

(c) clearly and accurately disclose any extraordinary assumption, hypothetical condition, or limiting condition that directly affects the appraisal and indicate its impact on value.

Sufficient findings of fact support the Board's conclusion that Nantz violated USPAP Standards Rule 2-1(b) and (c). Finding of fact number 4, as stated above, states Nantz made omissions and false statements concerning several items. Finding of fact number 6 states Nantz made misrepresentations and issued misleading reports. Other findings of fact clearly indicate that Nantz omitted required or essential information from her appraisal reports. By omitting the listing or sales history, the intended users of the appraisals were not provided important information about the subject properties.

USPAP defines "hypothetical condition" as "that which is contrary to what exists but is supposed for the purpose of analysis." The Board found Nantz stated in the appraisal of the Pee Dee Avenue property that it contained 2,435 square feet in finding of fact number 45. She came to this conclusion by including an unfinished basement that she stated was finished square footage. Nantz failed to indicate this hypothetical condition in her appraisal report. The Board made sufficient findings of fact to support its conclusion that Nantz violated USPAP Standards Rule 2-1(b) and (c). This assignment of error is overruled.

VI.  Communicating Appraisal Results in a Fraudulent Manner

[5] Nantz argues the trial court erred in affirming the Board's conclusion that by communicating her appraisal in a "fraudulent manner" she violated the USPAP ethics rule. We disagree.

The Board concluded, "1. Respondent is adjudged guilty of violating the Ethics Rule of the Uniform Standards of Professional Appraisal Practice . . . when she communicated the assignment results in a misleading or fraudulent manner . . . ."

Nantz argues that fraud requires an intent to deceive and the Board failed to make any findings that she intended to deceive anyone.

The Board found in finding of fact no. 4, "Respondent knowingly made omissions and false statements concerning the identification of

the property owner and the marketing and sales history of the subject properties . . . ." The Board further found:

> 5.  Respondent was aware of the standards and law governing the appraisal profession in North Carolina and was aware that her acts and omissions in performing the appraisals of these four (4) properties violated the standards and laws.
>
> 6.  Respondent made the misrepresentations and issued misleading reports with the knowledge that mortgage institutions and others relied on the information and value stated in the report as a basis upon which to approve or disapprove loans.

These findings of fact support the Board's conclusion that Nantz communicated appraisal results in a fraudulent or misleading manner. The Board's ethics rule is violated when the appraiser communicates the results in a fraudulent *or misleading* manner. This assignment of error is overruled.

## VII.  Notice

**[6]**  Nantz argues the trial court erred in upholding the Board's conclusion that she violated N.C. Gen. Stat. §§ 93E-1-12(a)(2), 93E-1-12(a)(8), 93E-1-12(a)(10), and 93E-1-12(a)(11) because the Board's notice of hearing did not mention these sections of the statute and failed to give her notice that she was charged with violating these provisions.

Nantz raises the issue of whether the Board's notice was sufficient for the first time in this appeal. This issue is not mentioned in Nantz's petition for judicial review presented to the trial court. The trial court's decision does not indicate that this issue was argued. N.C.R. App. P. 10(b)(1) requires, "In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." This assignment of error is dismissed.

## VIII.  Conclusion

The trial court properly affirmed the Board's decision to revoke Nantz's certification as an appraiser. The Board made sufficient findings of fact to support its conclusions of law.

Nantz failed to preserve the issue of whether she was given proper notice for our review. The order of the trial court affirming the decision of the Board is affirmed.

Affirmed.

Judges McCULLOUGH and LEVINSON concur.