STATE OF NORTH CAROLINA v. JONATHAN RUSSELL McCRAVEY, DEFENDANT

No. COA09-712

(Filed 4 May 2010)

**1. Evidence— cross-examination—exclusion of victim's prior failed drug test—trial court's comment—failure to make offer of proof—excluded as unfairly prejudicial**

The trial court did not abuse its discretion in a second-degree rape, false imprisonment, and assault inflicting serious injury case by excluding evidence of the victim's failed drug test taken some time during the prior two years. Given the totality of the circumstances, the trial court's statement regarding the exclusion did not reasonably have a prejudicial effect on the result of the trial and any error was harmless. Further, defendant did not present evidence regarding the victim's prior drug use, failed to make an offer of proof as to any further evidence that would establish a pattern of drug use, and the evidence was excluded as unfairly prejudicial under N.C.G.S. § 8C-1, Rule 403.

**2. Sexual Offenders— satellite-based monitoring—aggravated offense—second-degree rape**

The trial court did not err by ordering that defendant enroll in lifetime satellite-based monitoring after finding that defendant had been convicted of an aggravated offense under N.C.G.S. § 14-208.6(1a) through the use of force or the threat of serious violence. The term "aggravated offense" was not unconstitutionally vague, and defendant was convicted of second-degree rape.

Appeal by defendant from judgments entered on or about 23 July 2008 and on or about 24 July 2008 by Judge Catherine C. Eagles in Superior Court, Forsyth County. Heard in the Court of Appeals 29 October 2009.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Catherine M. (Katie) Kayser, for the State.*

*M. Alexander Charns, for defendant-appellant.*

STROUD, Judge.

Jonathan Russell McCravey ("defendant") appeals from his convictions for second-degree rape, false imprisonment and assault inflicting serious injury and the order enrolling him in lifetime satellite-based monitoring upon the completion of his sentence. For the following reasons, we find no error.

## I. Background

The State's evidence tended to show that Tiffany McCravey ("Tiffany") and defendant were married in 2000, but had separated and reconciled at least four or five times. On 24 October 2007, defendant and Tiffany were not living together. Tiffany was living with her six-year-old son Mike[1] in a house co-owned with defendant. However, because defendant had been threatening her and "had been using drugs for a while[,]" Tiffany was afraid that defendant would hurt her, and Tiffany's sister had been staying with her "just for security." Tiffany had not changed the locks on the doors but had barricaded them. On the night of 24 October 2007, Tiffany's sister was not present in the home, so Tiffany and her son were the only ones in the house. Around midnight, Tiffany heard a noise and immediately got out of bed. As Tiffany turned the hallway lights on, defendant was walking up the steps from the foyer into the hallway towards the bedroom. Tiffany immediately told defendant that he was not supposed to be there and that he needed to leave. Defendant told her that he was not leaving and started hitting Tiffany with his hands, first around her head, then all over her body. Tiffany fell down but got back up. Tiffany stated that "[h]e looked as if he had been, you know, smoking or drinking or high" and she had "never seen him so angry and so violent and so upset." Tiffany testified that defendant was "ranting and raving about someone else being in the house." Defendant asked her if there was another man in the house and went downstairs to search the house. Defendant then dragged Tiffany down the hallway to the bedroom. Tiffany managed to get away and ran downstairs to the door but defendant jumped from the top of the stairs and caught her, saying "Bitch, you're not going anywhere," and

---

1. We have used the pseudonym "Mike" to protect the minor child's identity.

he hit her. Defendant then grabbed Tiffany by the hair and began dragging her back upstairs to the bedroom. Tiffany testified that "at that time, I felt like I really needed to cooperate because he was just really—I mean, just—I had never seen him like that, like I mentioned before. At that time, he told me, he said, 'Bitch, I ought to kill you.' " Defendant then went downstairs and returned with a steak knife. With "the knife in his hand[,]" defendant said, "Bitch, I ought to cut your fucking throat." Defendant then ordered Tiffany into the master bathroom and went to their son Mike's bedroom to ask him about "mommy's boyfriend[.]" Defendant returned to the bathroom and dragged Tiffany by the hair into the bedroom and sat her on the bed. Defendant placed the knife on the night stand, then "rolled two joints[,]" put a sex movie in the DVD player and turned the television on. Defendant continued hitting Tiffany, asking her "Was this nigger worth it?" and was he worth "getting your ass beat?" Defendant told Tiffany to take off her gown and underwear. Tiffany testified that at this point:

> I felt like I needed to do whatever he told me to do. I felt like inside it had to end, but I didn't know how it was going to end. I just wanted to be alive when it did. And I decided in the bathroom, whatever he asked me to do, I was going to do it.

Defendant then told Tiffany, "Bitch, you're going to give me some pussy." Tiffany told him that she did not want to have sex, as she was "really in pain[,]" her lip was bleeding, her eye was swollen, and her son was upset. However, defendant told her "Yes, you are." Tiffany stated that she "didn't know if [defendant] was going to flip out and go in the room and try to hurt [Mike], so [her] whole thing was to try to keep him in [the bedroom] with [her] in terms of, you know, just cooperate." Tiffany then took off her gown and underwear. Defendant ordered Tiffany on the bed and proceeded to perform oral sex on Tiffany. Defendant then ordered Tiffany to perform oral sex on him and she did. Tiffany testified that defendant then "put his penis in my vagina[.]" When defendant had finished, Tiffany asked him to take her to the hospital. Defendant initially agreed but then changed his mind and instead got her some ice and some Advil. Defendant told her to lie down to "[l]et the medicine kick in" and they both fell asleep.

Hours later, on the morning of 25 October 2007, Tiffany heard someone knocking at the door. She immediately got up and ran to the door. It was a sheriff's deputy. Tiffany opened the door and told the deputy that her husband had been beating her and to get her son out

of the house. Tiffany was later transported to the hospital for treatment. She had a chipped front tooth and an orbital fracture to her right eye that required surgery. She was prescribed Vicodin for her pain and was out of work for three months. Tiffany testified that she was not using any drugs on the night in question.

Deputy Daniel Lauten of the Forsyth County Sheriff's Office testified that on the morning of 25 October 2007 he responded to a call about a suspicious vehicle parked in someone's driveway. Deputy Lauten ran the license plate and the address of the registered owner came up to an address on Asheby Road, in Belews Creek, North Carolina. Deputy Lauten then went to the address and rang the doorbell. He testified that Tiffany opened the door and said, "Thank God you're here. He's going to kill me." Deputy Lauten could tell that she had been severely assaulted, as her lips and eyes were swollen. Deputy Lauten then locked her in his patrol vehicle and called for backup. When the backup officers arrived, they searched the house and found Mike but did not find defendant. Deputy Lauten searched for weapons in the house and found one kitchen knife behind a night stand in the bedroom and another kitchen knife between the cushions of the couch in the living room. Deputy Lauten also found a "crack pipe" on the night stand in the bedroom.

Sergeant Chuck Barhaam of the Forsyth County Sheriff's Office testified that on 25 October 2007 he responded to Deputy Lauten's call for backup and went inside the home to search for defendant and Mike. Sergeant Barhaam testified that they did not find defendant in the home but set up a perimeter in an effort to locate defendant. Deputies later found defendant hiding in a nearby residence which was under construction and took defendant into custody.

Corporal Amy Snider-Wells of the Forsyth County Sheriff's Office testified that Tiffany told her that she had a 50B domestic violence restraining order against defendant for two years but it had expired in August 2007. Corporal Snider-Wells interviewed defendant at the Forsyth County Sheriff's Office. Defendant told Corporal Snider-Wells that he beat up his wife because she had another man in his home. Defendant initially denied having sex with his wife, but then told Corporal Snider-Wells that they did have a sexual encounter, but it was consensual.

Defendant testified in his own defense, stating that on 24 October 2007, he and Tiffany were not living together, but he was staying at his cousin's house up the street. Defendant admitted that he was on pro-

bation and, as part of that probation, he was not supposed to be around Tiffany. Defendant also admitted that as part of his probation he was on electronic house arrest, but he had violated his probation by cutting his electronic ankle bracelet off his leg. Defendant testified that Tiffany called him around 9:30 p.m. on 24 October 2007 to ask if he would come over to their house with some cocaine. Defendant stated that he arrived at their house around 11 p.m. and entered the back door using his key. Defendant stated that he went to the bedroom and Tiffany was awake watching television. Defendant testified that they snorted some of the cocaine that he brought and had oral sex and then intercourse. Defendant stated that while they were having intercourse, he heard something downstairs. He went to the kitchen, got a knife, and looked around the rest of the house. Defendant went back to the bedroom and asked Tiffany if anyone was in the house. Defendant then noticed that the bag of cocaine which had been in his pants pocket was missing. Defendant then asked Tiffany about the cocaine but "she said she didn't know what I was talking about." Defendant testified, "That's when I hit her, because I knew she was lying." Defendant admitted to hitting Tiffany for "about a good five/eight minutes[,]" but claimed it was after they had intercourse. Defendant stated that Tiffany asked him to take her to the hospital, but instead he gave her some ice and Advil, and they both fell asleep. Defendant testified that the next thing he remembered was waking up and hearing the doorbell ringing. After defendant discovered that a deputy sheriff was at the door, he fled the house but was later found by deputies and taken into custody.

On or about 28 January 2008, defendant was indicted on charges of first-degree rape, first-degree kidnapping and felony assault inflicting serious bodily injury. Defendant was tried on these charges at the 21 July 2008 Criminal Session of Superior Court, Forsyth County. On 23 July 2008, the jury found defendant guilty of second-degree rape, false imprisonment, and misdemeanor assault inflicting serious injury. The trial court then sentenced defendant to consecutive terms of 100 to 129 months imprisonment for the second-degree rape, 45 days for false imprisonment and 75 days for assault inflicting serious injury. The trial court also ordered defendant to enroll in lifetime satellite-based monitoring upon completion of his sentences. Defendant gave notice of appeal in open court.

## II. Trial Court's Comments

[1] Defendant first contends that when defense counsel asked Tiffany about a prior drug test, the trial court made an impermissible

opinion statement which interfered with defendant's impeachment of the witness as well as defendant's right to present a defense.

N.C. Gen. Stat. § 15A-1222 (2007) provides that "[t]he judge may not express during any stage of the trial, any opinion in the presence of the jury on any question of fact to be decided by the jury." "It is immaterial how such opinion is expressed or implied, whether in the charge of the court, in the examination of a witness, in the rulings upon objections to evidence or in any other manner." *State v. Ford,* 323 N.C. 466, 469, 373 S.E.2d 420, 421 (1988) (citation and quotation marks omitted). "In evaluating whether a judge's comments cross into the realm of impermissible opinion, a totality of the circumstances test is utilized. Unless it is apparent that such infraction of the rules might reasonably have had a prejudicial effect on the result of the trial, the error will be considered harmless." *State v. Larrimore,* 340 N.C. 119, 155, 456 S.E.2d 789, 808 (1995) (citation and quotation marks omitted). "While not every improper remark will require a new trial, a new trial may be awarded if the remarks go to the heart of the case." *State v. Sidbury,* 64 N.C. App. 177, 179, 306 S.E.2d 844, 845 (1983) (citation omitted). "Whether the judge's language amounts to an expression of opinion is determined by its probable meaning to the jury, not by the judge's motive." *State v. Springs,* —— N.C. App. ——, ——, 683 S.E.2d 432, 435 (2009) (citations and quotation marks omitted).

Defendant challenges the trial court's statement, "This isn't about anybody's drug use[,]" made in the following exchange during defense counsel's cross-examination of victim, Tiffany:

Defense Counsel: Now, you said that last time you used marijuana was seven and a half years ago, is that right?

Tiffany: Yes, about; yes.

Defense Counsel: But you've used cocaine before as well, haven't you?

Tiffany: No, I have not.

The Court: Sustained. This is not about anybody's drug use.

Defense Counsel: Can we approach the bench, Your Honor?

The Court: No.

Defense Counsel: So on the evening in question, there was no other use on your part of any drugs; is that right?

·Tiffany: No, I did not use any drugs.

Following the above exchange and out of the presence of the jury, defense counsel and the trial court had the following discussion about the trial court's comment:

The Court: All right. Did you want to say anything about my not letting you ask her about the cocaine?

Defense Counsel: Yes, Your Honor. For the record, I would be asking—I would ask her that and also followed up with a question of isn't it true that you failed the drug test in Guilford County that showed the presence of cocaine within the last two years, which under *State versus Williams* would go to her ability to see, hear and recall potentially as well as since I believe our offer of evidence later on will also relate to potential drug use that evening.

The Court: Well, you can ask her—I let you ask all you wanted about her drug use that evening. So you're not saying that this drug test was close to that day?

Defense Counsel: No, it's not. Not within the time frame that would be something she would still be under the influence. The only question, it may show a pattern wherein when she denies the fact that she had used it and then there is a—may have to admit that there was a positive screen for cocaine within a recent time period. *State versus Williams* was a two-year range. But I don't need to follow up any further. I'll put it on in direct at that point.

The Court: Okay. Well, *State versus Williams* is a very different case from this one; that one involved substantial mental health issues and—

Defense Counsel: I think it involved a suicide question; yes.

The Court: Yes. I mean, there is absolutely nothing to—

Defense Counsel: They did indicate in *State versus Williams* that potential drug use would affect your ability to see, hear and recall, so . . .

The Court: Well, that's not how I remember the facts of that case playing out, and it's extremely different from this. One-time cocaine use in the last seven and a half years is not relevant to somebody's credibility. And this is not about her drug use. So . . .

Defense Counsel: I wouldn't contend it was a one-time cocaine use, but it's also—it's not a credibility issue either.

The Court: Well, what is it if it's not credibility? What's it relevant to?

Defense Counsel: Later evidence from the defense will indicate that there was some [drug use during] that evening which would be a pattern of the parties. And clearly over the objection of the defense, the State brought out that Mr. McCravey has used drugs during the time period that they have been involved together on a regular basis.

The Court: All right. Well, I think we allowed enough questions about that under Rule 404, it's certainly—I don't see that it's relevant at all, but if it is it's marginal; and substantial unfair prejudice involved.

Defense Counsel: —Court's ruling.

The Court: All right. Anything else we need to do in this?

Assistant District Attorney: Not for the State, Your Honor.

The Court: All right. You all are excused until 9:30 tomorrow morning.

In context, the trial court's comment was a ruling by the trial court as to the admissibility of evidence of Tiffany's prior drug usage, specifically her failure of a drug test at some time during the prior two years. Defendant argues that the trial court erred in making the above statement as it (1) was an impermissible opinion, (2) interfered with his cross-examination of Tiffany, and (3) was based on N.C. Gen. Stat. § 8C-1, Rule 404.

A. Impermissible Opinion

Defendant contends that the trial court's statement improperly influenced the jury to believe that "drug usage [was] irrelevant and was very damaging to the accused's theory of the case[.]"

Defendant argues that drug usage was very relevant to his case as he contended that on the night in question, he and Tiffany used cocaine together, then had consensual intercourse, and after intercourse, he discovered his cocaine missing and assaulted his wife. Defendant contends that the trial court improperly influenced that jury to believe that Tiffany's drug use was not relevant to the case and undermined defendant's theory before the jury.

The trial court's statement was made during defense counsel's cross-examination of Tiffany. Based upon defendant's contentions as to the events of the evening, Tiffany's use of cocaine on that night goes to "the heart of the case[,]" as it would support defendant's order of events, including the fact that the intercourse with Tiffany was consensual. *Springs*, —— N.C. App. at ——, 683 S.E.2d at 436. However, the trial transcript shows that immediately following the trial court's statement—"This is not about anybody's drug use[,]"— the trial court permitted defense counsel to ask Tiffany whether she was using any drugs on the night of 24 October 2007. Allowing defense counsel to question Tiffany about her drug use on the night in question clearly demonstrated to the jury that Tiffany's drug use on that night was relevant and allowed defendant the opportunity to introduce evidence supporting his defense. In the context of the entire transcript, particularly defendant's questioning of Tiffany regarding her drug use on the night of the incident and defendant's later testimony regarding the same, the trial court's statement would not influence the jury to believe that Tiffany's drug use was "irrelevant[.]" Furthermore, during the final charge to the jury, the trial court instructed:

> The law, as indeed it should, requires the presiding judge to be impartial. You should not draw any inference from a ruling I have made, expression on my face, inflection in my voice, or anything I've said or done that I have any opinion about any aspect of this case. It is your exclusive province to find the facts of this case and to render a verdict reflecting the truth as you find it.

Therefore, given the "totality of the circumstances[,]" the trial court's statement did not "reasonably have . . . a prejudicial effect on the result of the trial" and any error by the trial court is "considered harmless." *Larrimore*, 340 N.C. at 155, 456 S.E.2d at 808.

## B. The Trial Court's Exclusion of Evidence

Defendant also contends that the trial court's statement and interference with cross-examination regarding Tiffany's prior drug use interfered with his right to present his defense fully, because he was not allowed to introduce evidence that established a pattern of drug usage by Tiffany. Defendant argues that the trial court's ruling excluding this evidence was in error.

This Court has previously held that "[t]o prevail on a contention that evidence was improperly excluded, either a defendant must

make an offer of proof as to what the evidence would have shown or the relevance and content of the answer must be obvious from the context of the questioning." *State v. Stiller*, 162 N.C. App. 138, 142, 590 S.E.2d 305, 307 (2004) (quoting *State v. Geddie*, 345 N.C. 73, 95, 478 S.E.2d 146, 157, *cert. denied*, 522 U.S. 825, 139 L. Ed. 2d 43 (1996)). Further,

> [t]his Court has explained that '[t]he reason for such a rule is that the essential content or substance of the witness' testimony must be shown before we can ascertain whether prejudicial error occurred. In the absence of an adequate offer of proof, we can only speculate as to what the witness' answer would have been.'

*State v. Jacobs*, —— N.C. App. ——, ——, 673 S.E.2d 724, 730 (2009) (quoting *State v. Clemmons*, 181 N.C. App. 391, 397, 639 S.E.2d 110, 114, *aff'd*, 361 N.C. 582, 650 S.E.2d 595 (2007)). The record shows that plaintiff did not make a specific offer of proof as to any evidence of Tiffany's prior drug use which was excluded by the trial court's ruling. The only additional evidence as to Tiffany's drug use mentioned in the record is defense counsel's above-quoted argument to the trial court that he wanted to ask Tiffany about a positive drug test at some point during the previous two years. We cannot speculate as to any additional evidence which defendant may have wanted to present regarding Tiffany's prior drug use, and we fail to see how evidence of one positive drug test within a two-year period would establish a "pattern" of drug use by Tiffany. Additionally, defendant was allowed to testify that he and Tiffany "periodically" used cocaine and that they used cocaine on the night in question. Because defendant did present evidence regarding Tiffany's prior drug use and because defendant failed to make an offer of proof as to any further evidence that would establish a pattern of drug use, we conclude that defendant has not properly preserved any objection regarding exclusion of evidence of Tiffany's prior drug use for review. Accordingly, we dismiss this argument.

C.  Ruling based on N.C. Gen. Stat. § 8C-1, Rule 404

Defendant also argues that the trial court erred by stating that the ruling on the admissibility of Tiffany's prior drug use was pursuant to N.C. Gen. Stat. § 8C-1, Rule 404. As noted above, defendant failed to make an offer of proof as to any additional evidence of Tiffany's prior drug use, so the only possible evidence we can consider is based upon defense counsel's statement that he wanted to ask her about a positive drug test within the prior two years. Prior to the trial court's

ruling on the admissibility of evidence of Tiffany's prior drug use, defense counsel made the following comment about the trial court's prior ruling on another issue: "And clearly over the objection of the defense, the State brought out that Mr. McCravey has used drugs during the time period that they have been involved together on a regular basis." In response to defense counsel's comment about her prior ruling, the trial court stated: "Well, I think we allowed enough questions about *that* under Rule 404[.]" (emphasis added). Therefore, in context, the trial court was simply responding to defense counsel's comments as to her prior ruling on the admissibility of evidence pursuant to Rule 404(b). As to the admissibility of evidence of Tiffany's prior drug use, the trial court then proceeded to exclude such evidence as there was "substantial unfair prejudice involved" pursuant to N.C. Gen. Stat. § 8C-1, Rule 403 ("relevant[] evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence"); *See State v. Locklear*, 363 N.C. 438, 448-49, 681 S.E.2d 293, 302 (2009) (Our appellate courts "review a trial court's decision to admit or exclude evidence under Rule 403 for abuse of discretion[,]" and "reverse the trial court only when the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." (citations and quotation marks omitted)). Defendant makes no argument as to how the trial court abused its discretion in making its ruling based on Rule 403. Therefore, we find no abuse of discretion in the trial court's ruling on exclusion of evidence that Tiffany had a positive drug test within the prior two years.

### III. Satellite Based Monitoring

[2] Defendant next contends that the trial court erred when it ordered that defendant enroll in lifetime satellite based monitoring ("SBM") after finding that defendant had been convicted of an "aggravated offense." This Court has held that the standard of review for SBM orders is as follows: " '[W]e review the trial court's findings of fact to determine whether they are supported by competent record evidence, and we review the trial court's conclusions of law for legal accuracy and to ensure that those conclusions reflect a correct application of law to the facts found.' " *State v. Kilby*, —— N.C. App. ——, ——, 679 S.E.2d 430, 432 (2009) (quoting *State v. Garcia*, 358 N.C. 382, 391, 597 S.E.2d 724, 733 (2004)). Here, pursuant to N.C. Gen. Stat. § 14-208.40A, the trial court found defendant

had been convicted of a "reportable conviction" as defined by N.C. Gen. Stat. § 14-208.6(4). The trial court also found that defendant was convicted of an "aggravated offense" as defined by N.C. Gen. Stat. § 14-208.6(1a) and ordered that upon completion of defendant's sentence, defendant was required to enroll in SBM for his natural life.

N.C. Gen. Stat. § 14-208.6(1a) (2007) defines an "aggravated offense" as

> any criminal offense that includes either of the following: (i) engaging in a sexual act involving vaginal, anal, or oral penetration with a victim of any age through the *use of force* or the threat of serious violence[.] (emphasis added).

Defendant contends that the statutory definition of "aggravated offense" in N.C. Gen. Stat. § 14-208.6(1a) is unconstitutionally vague because it does not specify what constitutes "use of force[.]"

> It is settled law that a statute may be void for vagueness and uncertainty. A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law. Even so, impossible standards of statutory clarity are not required by the constitution. When the language of a statute provides an adequate warning as to the conduct it condemns and prescribes boundaries sufficiently distinct for judges and juries to interpret and administer it uniformly, constitutional requirements are fully met.

*In re Burrus*, 275 N.C. 517, 531, 169 S.E.2d 879, 888 (1969) (citations and quotation marks omitted). "Statutory language should not be declared void for vagueness unless it is not susceptible to reasonable understanding and interpretation. Mere differences of opinion as to a statute's applicability do not render it unconstitutionally vague." *Rhyne v. K-Mart Corp.*, 358 N.C. 160, 187, 594 S.E.2d 1, 19 (2004) (citations omitted). We apply the rules of statutory interpretation to discern the meaning of N.C. Gen. Stat. § 14-208.6(1a). *Id.*

"Statutory interpretation begins with [t]he cardinal principle of statutory construction . . . that the intent of the legislature is controlling. In ascertaining the legislative intent, courts should consider the language of the statute, the spirit of the statute, and what it seeks to accomplish." *Benton v. Hanford*, —— N.C. App. ——, ——, 671 S.E.2d 31, 34 (2009) (citation and quotation marks omitted). "Where the

statutory language is clear and unambiguous, the Court does not engage in judicial construction but must apply the statute to give effect to the plain and definite meaning of the language." *In re Nantz*, 177 N.C. App. 33, 40, 627 S.E.2d 665, 670 (2006) (citation and quotation marks omitted). "If the language is ambiguous or unclear, the reviewing court must construe the statute in an attempt not to defeat or impair the object of the statute [ . . .] if that can reasonably be done without doing violence to the legislative language." *Arnold v. City of Asheville*, 186 N.C. App. 542, 548, 652 S.E.2d 40, 46 (2007) (citations and quotation marks omitted).

> In so doing, a court may look to other indicia of legislative will, including: the purposes appearing from the statute taken as a whole, the phraseology, the words ordinary or technical, the law as it prevailed before the statute, the mischief to be remedied, the remedy, the end to be accomplished, statutes in pari materia, the preamble, the title, and other like means . . . . Statutory provisions must be read in context[,] [and those] dealing with the same subject matter must be construed in pari materia, as together constituting one law, and harmonized to give effect to each.

*Trayford v. N.C. Psychology Bd.*, 174 N.C. App. 118, 123, 619 S.E.2d 862, 865 (2005).

Defendant argues that "use of force" is a "term of art" and the statute does not specify whether it means "deadly force[,] . . . excessive force, unreasonable force, *de minimis* force, or reasonable force." The plain language of N.C. Gen. Stat. § 14-208.6(1a) does not specify what type of force is required, and Article 27A of Chapter 14 of the General Statutes does not specifically define what type of force N.C. Gen. Stat. § 14-208.6(1a) is referencing or provide for any further definition of force. However, if we consider the context of the definition of "aggravated offense" stated in N.C. Gen. Stat. § 14-208.6(1a), the meaning of "use of force" becomes clear. First, we note that to be subject to SBM, a defendant must have a "reportable conviction" as defined by N.C. Gen. Stat. § 14-208.6(4). Pursuant to N.C. Gen. Stat. § 14-208.6(4), a "reportable conviction" includes conviction of "a sexually violent offense." N.C. Gen. Stat. § 14-208.6(5) states that a "sexually violent offense" includes second degree rape pursuant to N.C. Gen. Stat. § 14-27.3. Thus, second-degree rape is a "reportable conviction." *See* N.C. Gen. Stat. §§ 14-208.6(4) and 14-208.6(5). Only a "reportable conviction" can be an "aggravated offense" as defined by N.C. Gen. Stat. § 14-208.6(1a). We therefore look to N.C. Gen. Stat. § 14-27.3, which defines second-degree rape, to determine if this

crime is an "aggravated offense." *See State v. Davison*, —— N.C. App. ——, ——, 689 S.E.2d 510, 517 (2009) (The determination of whether an offense is an "aggravated offense" pursuant to N.C. Gen. Stat. § 14-208.40A is based solely upon "the elements of the offense of which a defendant was convicted and . . . not . . . the underlying factual scenario giving rise to the conviction."). Second-degree rape pursuant to N.C. Gen. Stat. § 14-27.3 (2007) includes the element that the criminal offense be committed "by force and against the will of the other person[.]" We note that N.C. Gen. Stat. § 14-27.3, like N.C. Gen. Stat. § 14-208.6(1a), does not include a definition of "force," but the force required in a sexual offense of this nature has been well-defined by case law.

Sexual offenses such as first-degree rape pursuant to N.C. Gen. Stat. § 14-27.2 (2007), second-degree rape pursuant to N.C. Gen. Stat. § 14-27.3, first-degree sexual offense pursuant to N.C. Gen. Stat. § 14-27.4 (2007), and second-degree sex offense pursuant to N.C. Gen. Stat. § 14-27.5 (2007), all include the element that the criminal offense be committed "by force and against the will of the other person[.]" In the context of the above-enumerated sexual offenses, our Supreme Court has determined that the statutory phrase, "by force and against the will of the other person," means the same as it did at common law. *State v. Locklear*, 304 N.C. 534, 539, 284 S.E.2d 500, 503 (1981). Our Courts have further defined the element of force in these sexual offenses by stating that "[t]he requisite force may be established either by actual physical force or by constructive force in the form of fear, fright, or coercion. 'Physical force' means force applied to the body." *State v. Scott*, 323 N.C. 350, 354, 372 S.E.2d 572, 575 (1988) (citations omitted). "Constructive force is demonstrated by proof of threats or other actions by the defendant which compel the victim's submission to sexual acts. Threats need not be explicit so long as the totality of circumstances allows a reasonable inference that such compulsion was the unspoken purpose of the threat." *State v. Hardy*, 104 N.C. App. 226, 231, 409 S.E.2d 96, 98-99 (1991) (citations and quotation marks omitted). The language of N.C. Gen. Stat. § 14-208.6(1a)—"through the *use of force* or the threat of serious violence"—reflects the established definitions as set forth in case law of both physical force and constructive force, in the context of the sexual offenses enumerated in N.C. Gen. Stat. §§ 14-27.2, 14-27.3, 14-27.4, and 14-27.5. (emphasis added).

The legislature intended that the same definition of force, as has been traditionally used for second-degree rape, to apply to the deter-

mination under N.C. Gen. Stat. § 14-208.6(1a) that an offense was committed by "the use of force or the threat of serious violence." Given the similarity in the language describing the use of force as to the above-referenced criminal sexual offenses and the Legislature's use of the phrase "through the use of force or the threat of serious violence" in the statutory definition of "aggravated offense" in N.C. Gen. Stat. § 14-208.6(1a), a defendant would adequately be warned as to the conduct that would fall into the definition of an "aggravated offense" which could subject him to SBM. *Burrus*, 275 N.C. at 531, 169 S.E.2d at 888. Therefore, we hold that the definition of "aggravated offense" in N.C. Gen. Stat. § 14-208.6(1a) is not unconstitutionally vague.

Defendant further argues that even if the Court does not find that the statute is void for vagueness, the particular facts of this case do not constitute an "aggravated offense" pursuant to N.C. Gen. Stat. § 14-208.6(1a). However, as stated above, defendant's argument has been rejected by this Court in *Davison*, —— N.C. App. at ——, 689 S.E.2d at 517 ("[W]hen making a determination pursuant to N.C.G.S. § 14-208.40A, the trial court is only to consider the elements of the offense of which a defendant was convicted and is not to consider the underlying factual scenario giving rise to the conviction."). Here, defendant was convicted of second-degree rape. The essential elements of second-degree rape include vaginal intercourse "[b]y force and against the will of the other person[.]" N.C. Gen. Stat. § 14-27.3(a)(1). Defendant does not contend that he did not have intercourse with Tiffany, but only that this act was not "by force and against" her will. The jury rejected defendant's contention that the intercourse was consensual and found that it was "by force and against" Tiffany's will by finding him guilty of second-degree rape. As the essential elements of second-degree rape are covered by the plain language of "aggravated offense" as defined by N.C. Gen. Stat. § 14-208.6(1a), we hold that second-degree rape is an "aggravated offense" and the trial court did not err in ordering defendant to lifetime SBM pursuant to N.C. Gen. Stat. § 14-208.40A.

## IV. Conclusion

As the trial court's comments were not prejudicial to the defendant, the trial court did not abuse its discretion in excluding evidence as to Tiffany's prior drug use, and the trial court did not err in ordering defendant to enroll in lifetime Satellite Based Monitoring, we find no error.

ADKINS v. STANLY CNTY. BD. OF EDUC.

[203 N.C. App. 642 (2010)]

NO ERROR.

Judges STEPHENS and BEASLEY concur.