IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-6

Filed: 15 December 2020

Davidson County, Nos. 16 CRS051399-400

STATE OF NORTH CAROLINA

v.

MARVIN LEE TYSINGER, Defendant.

Appeal by defendant from judgments entered on or about 16 February 2018 by Judge Martin B. McGee in Superior Court, Davidson County. Heard in the Court of Appeals 12 May 2020.

> *Attorney General Joshua H. Stein, by Assistant Attorney General Sherri Horner Lawrence, for the State.*
>
> *Glover and Petersen, P.A., by Ann B. Petersen, for defendant-appellant.*

STROUD, Judge.

Marvin Lee Tysinger (Defendant) appeals judgments convicting him of multiple sexual offenses against a child. We conclude there was no error.

## I. BACKGROUND

In 2012, Davidson County DSS began an investigation into the homelife of approximately ten-year-old Isabel[1] following reports of her acting out sexually with other children. Isabel was living with her mother, in her grandparents' home.

---

[1] Pseudonyms are used for all relevant persons throughout this opinion to protect the identity of the minor.

Isabel's mother had been sexually abused by Isabel's grandfather as a child as well as in her adult life. Her physical examination raised some concerns but did not show any clear physical evidence of sexual abuse, but due to the overall health concerns of the living environment, Isabel and her brother were placed outside the grandparents' home into a nearby friends' home.

In 2014, Davidson County DSS discovered Isabel and her brother had been sleeping in the bed with their grandfather. During a second physical examination, the doctor discovered changes consistent with penetrating trauma and suspected Isabel had been sexually abused. Isabel admitted to DSS she had been sexually abused by Marvin Tysinger (Defendant). Isabel stated her mother had taken her to Defendant's home and allowed him to touch her inappropriately in exchange for drugs. This abuse occurred on two occasions: first, sometime between 23 January 2011 and 22 January 2012 when Isabel was ten, and second, in September 2014, when she was thirteen.

For the first alleged incident of abuse, Defendant was charged with: (1) rape of a child by adult; (2) sexual offense with a child by an adult; and (3) indecent liberties with a child. For the second alleged incident of abuse, Defendant was charged with: (1) statutory rape of a thirteen to fifteen year-old; (2) statutory sexual offense with a thirteen to fifteen year old; and (3) indecent liberties with a child.

At trial, Isabel's mother testified she had been using drugs and got them from Defendant. She testified she paid for the drugs by doing household chores, having sex with Defendant, and bringing Isabel to Defendant to have sex with him. Isabel's mother further testified that she had initially lied to the DSS during its investigation of Isabel's sexual abuse to protect both Defendant and herself, but she later admitted her knowledge of what Defendant had done. She also testified she had been charged with felony child abuse and pled guilty to attempted felony child abuse in exchange for her truthful testimony at Defendant's trial.

On cross-examination of Isabel's mother, Defendant's attorney questioned her extensively regarding her plea deal. After she was asked if she "actually plead guilty," she answered, "No[,]" and the State objected and asked to be heard. The trial court excused the jury, and then heard the State's objection to further questioning regarding "new aspects of the terms of the guilty plea[,]" specifically that Isabel's mother entered an *Alford* plea.[2] The State argued that the aspects of the plea related to the meaning of an *Alford* plea are not relevant and will be confusing to the jury. The trial court heard the arguments of both sides and excluded the evidence, finding "that it is not relevant to this testimony. Rather I would find it wouldn't survive the balancing test. I think the nuances of what an *Alford* plea is, why someone would do

---

[2] "An *Alford* plea allows a defendant to 'voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.' *North Carolina v. Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 167, 27 L. Ed. 2d 162, 171 (1970)." *State v. Kimble*, 141 N.C. App. 144, 145 n.2, 539 S.E.2d 342, 343 n.2 (2000).

that, as far as all that detail, I would sustain that objection." Shortly thereafter, the trial court clarified that the "sustaining of the objection is two part. First, I don't find it's relevant. And, second, to the extent it is relevant, I find it does not survive the [Rule 403] balancing test."

Defendant was found guilty on all six charges, with the trial court combining the six verdicts into four judgments: (1) rape of a child; (2) felony statutory rape of a person 13-15 years old; (3) consolidation of statutory sexual offense with a person 13-15 years old and indecent liberties with a child, and (4) consolidation of sexual offense with a child with indecent liberties with a child. Defendant was sentenced to an active sentence of 300 to 420 months for each judgment, with the four sentences to run consecutively.

Following the guilty verdicts, the trial court asked, "does anybody wish to be heard further on [sex offender registration and satellite-based monitoring]?" The State responded, "No, other than the premarked findings I believe the Court should find[;]"and Defendant neither objected nor commented on sex offender registration or satellite-based monitoring at any point in the proceedings. Defendant was ordered to enroll in the sex offender registry and submit to SBM for life without a hearing. Following Defendant's sentencing, he gave oral notice of appeal in open court from the judgments. Defendant has also filed a Petition for Writ of Certiorari asking this Court to consider the SBM order.

## II.  ANALYSIS

### A. Criminal Judgments

Defendant first contends "the trial court erred by sustaining the State's objection to evidence that . . . [Isabel's] mother, would not admit guilt when she entered her guilty plea."  (Original in all caps.) Isabel's mother testified on direct examination regarding the plea deal, and defendant's counsel extensively cross-examined her:

> Q.     And you and Mr. Taylor talked about you pled guilty to an attempted felony child abuse, right?
>
> A.     Yeah.
>
> Q.     When you came before the Court you had counsel, right, an attorney?
>
> A.     Yes.
>
> Q.     Who helped you with the case and talked to you all about the nature of the charges against you, right?
>
> A.     Yes.
>
> Q.     And you were aware of the prison time exposure on that charge, right?
>
> A.     Yes.
>
> Q.     Thank you.  And when you pled guilty to the attempted child abuse that was part of a plea deal, wasn't it?
>
> A.     Yes.

Q.    . . . The original charge was not attempted felony child abuse, right, it was just felony child abuse, correct?

A.    Correct.

Q.    And under our laws that was a Class D felony, does that sound right, it was a higher level felony?

A.    Yes.
. . . .

Q.    The charge you pled guilty to was different from the original charge in that it was a lower level offense, right?

A.    Yes.

Q.    You were aware that if convicted of the original charge, the minimum exposure even for a first time offender would have been no less than 38 months or three years in prison, right?

A.    Yes.

Q.    But pleading to the reduced charge you knew limited your exposure on a lower level felony where a sympathetic judge could give you as little as 15 months in terms of punishment, right?

A.    Yes.

Q.    So it greatly reduced by more than a year the time of exposure you were facing, right?

A.    Yeah.

Q. And you knew that if you were convicted of the original charge that it was mandatory prison time, right?

A.    Yes.

Q.    And you knew that when you pled down to the lower charge there was an opportunity for a nonprison sentence or probation, right?

A.    Right.

Q.    So you got that benefit in exchange for your plea, right?

A.    Yes.

Q.    . . . You are still awaiting sentencing on that case with an understanding there is no guarantees from the DA's office, the sentencing is totally at the discretion of the sentencing judge later, right?

A.    Right.

Q.    The only strings attached with your plea arrangement were that you had to testify truthfully and consistently with your previous statements and your affidavit today, right?

A.    Yes.

Q.    If you don't do that they can pull this deal and it's voidable, right?

A.    Yes.

Q.    So in that sense you have an extra motivation to stick to your story, right?

A.    Yes.

Q.    When you went in front of the judge in this case September 14th of last year, you didn't actually plead guilty, did you?

7

A.    No.

At this point, as noted in the Background, the State objected.  After hearing

from both parties, the trial court sustained the State's objection on the basis of Rules

of Evidence 401 and 403.  When the jury returned, the trial court gave the following

instruction:

> There is evidence which tends to show that a witness testified or is testifying under an agreement with the prosecutor for a charge reduction in exchange for testimony.  If you find that the witness testified for this reason in whole or in part, you should examine this testimony with great care and caution.  If, after doing so, you believe the testimony in whole or in part, you will treat what you believe the same as any other believable evidence.

## 1.    Offer of Proof

Before we consider Defendant's issue, we note that the State contends

Defendant failed to make an offer of proof to preserve appellate review.

> This Court has previously held that to prevail on a contention that evidence was improperly excluded, either a defendant must make an offer of proof as to what the evidence would have shown or the relevance and content of the answer must be obvious from the context of the questioning.  Further,
>> this Court has explained that the reason for such a rule is that the essential content or substance of the witness' testimony must be shown before we can ascertain whether prejudicial error occurred.  In the absence of an adequate offer of proof, we can only

8

> speculate as to what the witness' answer
> would have been.

*State v. McCravey*, 203 N.C. App. 627, 635-36, 692 S.E.2d 409, 417 (2010) (citations, quotation marks, and brackets omitted).

While it is correct that Defendant did not question Isabel's mother on *voir dire*, her plea transcript is part of the record on appeal and marked as "DEFENDANT'S EXHIBIT POST VERDICT 1[.]" Even assuming that Defendant did not admit the plea transcript at the time of the trial court's ruling on the evidence, it is in the record and was an exhibit before the trial court, and the State has stipulated and agreed to the settlement of the record.[3] Further, given the extensive line of questions and answers on cross-examination before the jury was excused from the courtroom, it is "obvious from the context of the questioning" that Defendant wished to probe the details of Isabel's mother's plea agreement even further in an attempt to undermine her credibility.[4] *Id.* The only aspect of her plea agreement not yet addressed in

---

[3] The State contends "[t]here is nothing in the record or counsel's arguments that even merely suggests that [Isabel's mother] understood what an *Alford* plea was and could fully explain the purpose and difference to the jury" but the plea transcript, signed by Isabel's mother, would be some evidence.

[4] To the extent the State deems that "the significance of the excluded evidence" is not "obvious from the record[,]" we note "[o]ur Supreme Court has never held that a formal offer of proof is the only sufficient means to make an offer of proof: We wish to make it clear that there may be instances where a witness need not be called and questioned in order to preserve appellate review of excluded evidence. *State v. Simpson*, 314 N.C. 359, 372, 334 S.E.2d 53, 61 (1985). Rather, our Supreme Court has merely stated that a formal offer of proof is the preferred method and that the practice of making an informal offer of proof should not be encouraged, *State v. Willis*, 285 N.C. 195, 200, 204 S.E.2d 33, 36 (1974). Our Court has held that an informal offer of proof may be sufficient in certain situations to establish the essential content or substance of the excluded testimony. *State v. Walston*, ___ N.C. App. ___, ___, 747 S.E.2d 720, 724 (2013), *reversed on other grounds*, 367 N.C. 721, 766 S.E.2d 312 (2014)." *State v. Martin*, 241 N.C. App. 602, 605, 774 S.E.2d 330, 332–33 (2015) (quotation marks omitted).

Isabel's mother's testimony was that it was an *Alford* plea. We thus turn to Rules 401 and 403 to consider the trial court's ruling on the evidence of Isabel's mother's plea.

### 2. *Alford* **Plea Evidence**

Defendant argues the trial court erred in not allowing evidence of Isabel's mother's *Alford* plea because it was

> relevant to the question of whether the jury could accept as credible [Isabel's mother's] testimony that she actually witnessed a sexual assault on [Isabel] by . . . [Defendant] and allowed it to happen. Prior to her written statement implicating [Defendant] and her plea agreement which required her to give testimony in accord with it, [Isabel's mother] had consistently maintained that she had never seen any sexual assault on [Isabel] by [Defendant] and didn't' believe he would do something like that, a claim that she was innocent of allowing her child to be sexually assaulted. If the jury had been able to hear that evidence, despite the substantial benefits of the plea terms, [Isabel's mother] was unwilling to say that she was guilty, that she was unwilling to say that she was present at sexual assault on her child and allowed it to happen, the jury could have seen this as evidence that [Isabel's mother]'s statement and testimony was the product of pressure on her from facing the risk of a mandatory three year prison sentence if convicted of the original charge.

In summary, Defendant contends evidence of the *Alford* plea would assist the jury in evaluating Isabel's mother's credibility, particularly as to her "testimony that she actually witnesses a sexual assault on [Isabel] by . . . [Defendant] and allowed it to happen" given her prior inconsistent statements regarding the matter.

### a. **Standard of Review**

> Although the trial court's rulings on relevancy technically are not discretionary and therefore are not reviewed under the abuse of discretion standard applicable to Rule 403, such rulings are given great deference on appeal. Because the trial court is better situated to evaluate whether a particular piece of evidence tends to make the existence of a fact of consequence more or less probable, the appropriate standard of review for a trial court's ruling on relevancy pursuant to Rule 401 is not as deferential as the abuse of discretion standard which applies to rulings made pursuant to Rule 403.

*Dunn v. Custer*, 162 N.C. App. 259, 266, 591 S.E.2d 11, 17 (2004) (citations and quotation marks omitted). Thus, a Rule 401 review is less deferential than a Rule 403 review which considers whether "the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988).

**b.    Rules of Evidence 401 and 403**

In ruling on the State's objection to evidence regarding the *Alford* plea, the trial court stated, "First, I don't find it's relevant. And, second, to the extent it is relevant, I find it does not survive the balancing test." Rule 401 provides that "'[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (2010). Further, "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of North Carolina, by Act of Congress, by Act of the General Assembly or by these rules.

11

Evidence which is not relevant is not admissible." N.C. Gen. Stat. § 8C-1, Rule 402 (2010). Furthermore, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen. Stat. § 8C-1, Rule 403 (2010).

We will assume for purposes of this appeal that the evidence of Isabel's mother's *Alford* plea was relevant. But as noted by the trial court, an *Alford* plea is "nuance[d]" and a defendant may have many reasons for an *Alford* plea. Defendant's argument itself is a nuanced way of contending that Isabel's mother lied about seeing Defendant have sex with Isabel, and the evidence of this untruthfulness, according to Defendant, is the fact that she was only willing to pled guilty to an *Alford* plea; this argument requires extensive speculation on both Isabel's mother's intent in testifying and her understanding of the relevance of an *Alford* plea.[5] Further, while Defendant focuses on the difference between what he deems a standard guilty plea and an *Alford* plea, an *Alford* plea *is* a guilty plea, just as Isabel's mother testified. In *State v. Alston*, 139 N.C. App. 787, 792-93, 534 S.E.2d 666, 669-70 (2000), this Court stated:

> Nonetheless, an "*Alford* plea" constitutes "a guilty

---

[5] Since Defendant did not make an offer of proof of Isabel's mother's testimony regarding her own understanding or beliefs about the meaning of an *Alford* plea, the record before us does not allow us to consider this aspect of Defendant's argument.

plea in the same way that a plea of *nolo contendere* or no contest is a guilty plea." *State ex rel. Warren v. Schwarz*, 219 Wis.2d 615, 579 N.W.2d 698, 706 (1998); *see Alford*, 400 U.S. at 37, 91 S.Ct. at 167–68, 27 L.Ed.2d at 171 (no "material difference between a plea that refuses to admit commission of the criminal act and a plea containing a protestation of innocence"); *Birdsong*, 958 P.2d at 1130 ("An *Alford* plea is to be treated as a guilty plea and a sentence may be imposed accordingly.").

As a consequence, in accepting an "*Alford* plea" as

a concession to a defendant, the trial court accords that defendant no implications or assurances as to future revocation proceedings.

*Birdsong*, 958 P.2d at 1129. In other words, an "*Alford* plea" is in no way "infused with any special promises," *Warren,* 579 N.W.2d at 711, nor does acceptance thereof constitute a promise that a defendant will never have to admit his guilt[.] *[I]d.*

As the Wisconsin Supreme Court stated in *Warren*:

[a] defendant's protestations of innocence under an *Alford* plea extend only to the plea itself.

"*There is nothing inherent in the nature of an Alford plea that gives a defendant any rights, or promises any limitations, with respect to the punishment imposed after the conviction.*"

Put simply, an *Alford* plea is not the saving grace for defendants who wish to maintain their complete innocence. Rather, it is a device that defendants may call upon to avoid the expense, stress and embarrassment of trial and to limit one's exposure to

13

> punishment [and it is] not the saving grace for defendants who wish to maintain their complete innocence.
>
> *Id.* at 707 (citations omitted) . . . ; *see generally Smith v. Com.*, 27 Va.App. 357, 499 S.E.2d 11, 13 (1998) (quoting *State v. Howry*, 127 Idaho 94, 896 P.2d 1002, 1004 (Ct.App.1995)) ("[A]lthough an *Alford* plea allows a defendant to plead guilty amid assertions of innocence, it does not require a court to accept those assertions . . . [but the court may] consider all relevant information regarding the crime, including [the] defendant's lack of remorse.").

*Id.* (alterations in original) (ellipses omitted).

Under the circumstances of this case, we agree with the trial court that evidence Isabel's mother entered an *Alford* plea would serve to confuse the jury regarding the legal details of her plea. In particular, someone would have to explain the meaning of an *Alford* plea, and Isabel's mother's own understanding of the exact meaning of an *Alford* plea may have been different that the technical legal meaning or the intent Defendant assumes she had. Defendant's counsel cross-examined Isabel's mother at length regarding her prior inconsistent statements of the sexual abuse and her guilty plea. The trial court did not abuse its discretion in excluding evidence that the plea was an *Alford* plea because this evidence in the context of this case would likely lead to "confusion of the issues, or misleading the jury[.]" N.C.G.S. § 8C-1, Rule 403. This argument is overruled.

## B. Defendant's SBM Order

Defendant also contends "the trial court erred by ordering that . . . [he] submit to lifetime satellite[-based] monitoring with[out] first determining that it was a reasonable search." (Original in all caps). However, appellate review of this argument is limited in two meaningful ways: (1) Defendant's oral notice of appeal is insufficient to confer jurisdiction on this Court, and (2) Defendant did not argue before the trial court that the imposition of SBM constituted an unreasonable search under the Fourth Amendment.

First, pursuant to Rule 3 of the North Carolina Rules of Appellate Procedure, a defendant must file a written notice of appeal from an SBM order based on the civil nature of SBM proceedings. N.C. R. App. P. 3 ("Any party entitled by law to appeal from a judgment or order of a superior or district court rendered in a civil action or special proceeding may take appeal by filing notice of appeal with the clerk of superior court and serving copies thereof upon all other parties[.]"); *see also State v. Brooks*, 204 N.C. App. 193, 194-95, 693 S.E.2d 204, 206 (2010) (holding oral notice from SBM orders does not confer jurisdiction on this Court). Our appellate courts, however, are authorized to issue writs of certiorari "to permit review of the judgments and orders of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action[.]" N.C. R. App. P. 21(a)(1). Defendant concedes that his oral notice of appeal from the SBM order was improper under Appellate Rule 3 and

15

requests we grant his Petition for Writ of Certiorari to enable review of the SBM order.

Second, under Rule 10 of the North Carolina Rules of Appellate Procedure, "to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C. R. App. P. 10(a)(1). A review of the transcript shows that Defendant did not argue that the imposition of SBM constituted an unreasonable search under the Fourth Amendment. As a result, defendant has waived the ability to argue it on appeal. *State v. Wiley*, 355 N.C. 592, 615, 565 S.E.2d 22, 39 (2002) ("It is well settled that an error, even one of constitutional magnitude, that defendant does not bring to the trial court's attention is waived and will not be considered on appeal."). However, in contrast to the violation under Appellate Rule 3, which Defendant concedes and attempts to remedy by issuance of writ of certiorari, Defendant does not acknowledge that he violated the preservation requirement of Rule 10.

We recognize this Court has utilized Rule 2 of the North Carolina Rules of Appellate Procedure to permit a defendant to raise an unpreserved argument concerning the reasonableness of an SBM order. Under Rule 2, "[t]o prevent manifest injustice to a party. . . either court of the appellate division may . . . suspend or vary the requirements or provisions of any of these rules in a case pending before it . . .

16

upon its own initiative[.]" N.C. R. App. P. 2. "Rule 2 relates to the residual power of our appellate courts to consider, *in exceptional circumstances*, significant issues of importance in the public interest or to prevent injustice which appears manifest to the Court *and only in such instances*." *State v. Campbell*, 369 N.C. 599, 603, 799 S.E.2d 600, 602 (2017) (emphasis in original) (citation and quotation marks omitted).

Although Defendant only acknowledges one of the extraordinary steps, he "essentially asks this Court to take two extraordinary steps to reach the merits, first by issuing a writ of certiorari to hear his appeal, and then by invoking Rule 2 of the North Carolina Rules of Appellate Procedure to address his unpreserved constitutional argument." *State v. DeJesus*, 265 N.C. App. 279, 291, 827 S.E.2d 744, 753 (citation, quotation marks, and bracket omitted), *disc. review denied*, 372 N.C. 707, 830 S.E.2d 837 (2019). However, "[d]efendant fails to identify any evidence of manifest injustice warranting the invocation of Rule 2." *State v. Worley*, 268 N.C. App. 300, ___, 836 S.E.2d 278, 282 (2019), *disc. review denied*, 375 N.C. 287, ___ S.E.2d ___ (2020). As a result, we decline to grant Defendant's Petition for Writ of Certiorari and to invoke Rule 2 to remedy this failure. We dismiss this issue for lack of jurisdiction.

### III. <u>CONCLUSION</u>

We conclude there was no error in the trial court's judgment, and we dismiss Defendant's request to review the SBM order.

17

NO ERROR IN PART; DISMISSED IN PART.

Chief Judge McGEE concurs.

Judge MURPHY concurs in the result only with separate opinion.

No. COA19-6 – *State v. Tysinger*

MURPHY, Judge, concurring in result only.

Although I rely on the same facts set out in the Majority and come to the same conclusions as the Majority, my reasoning in coming to these conclusions differs and I write separately to fully set out that reasoning.

Defendant appeals the trial court's exclusion of evidence of the victim's mother taking an *Alford* plea under N.C.G.S. § 8C-1, Rule 401 ("Rule 401") and 403 ("Rule 403"). Defendant also filed a *Petition for Writ of Certiorari* requesting this court to permit review of the order entered subjecting Defendant to lifetime satellite-based monitoring ("SBM") as it was made without a reasonableness inquiry in accordance with *Grady v. North Carolina*, 575 U.S. 306, 191 L. Ed. 2d 459 (2015). The trial court erred by finding the evidence irrelevant, as the evidence had a tendency to make the events underlying the charge less likely to have occurred, as well as by conducting a Rule 403 balancing test in which the evidence being weighed was not found to be relevant. These errors were not prejudicial, as the exclusion of the evidence did not have a reasonable possibility to have changed the outcome of the trial. Due to Defendant's failure to preserve his SBM argument by raising it at trial and failure to timely appeal the SBM order in accordance with N.C. R. App. P. 3 ("Rule 3"), I would decline to grant his *Petition for Writ of Certiorari* and invoke N.C. R. App. P. 2 ("Rule 2") to remedy these failures. I would deny his *Petition for Writ of Certiorari* and dismiss the SBM issue for lack of jurisdiction.

## ANALYSIS

## A. Exclusion of Evidence

Defendant argues the trial court committed error by excluding evidence of the victim's mother, Mindy,[6] accepting an *Alford* plea[7] because the exclusion prevented the jury hearing that "even after agreeing to testify that she witnessed a sexual assault on [Isabel] by [Defendant] and did nothing to stop it, [Mindy] continued to maintain that she was innocent of the charge of allowing [Isabel] to be sexually assaulted by [Defendant]." Defendant argues this was

> relevant to the question of whether the jury could accept as credible [Mindy's] testimony that she actually witnessed a sexual assault on [Isabel] by [Defendant] and allowed it to happen. . . . [From which] the jury could have seen this as evidence that [Mindy's] statement and testimony was the product of pressure on her from facing the risk of a mandatory three year prison sentence if convicted of the original charge.

Defendant argues this error was prejudicial because it kept the jury from finding Mindy not credible due to the incentivized testimony, and from considering other people as perpetrators of the sexual assault. He argues this had a reasonable possibility of changing the jury's verdict.

### 1. Preservation of Review

---

[6] Pseudonyms are used for all relevant persons throughout this opinion to protect the identity of the minor and for ease of reading.

[7] An *Alford* plea is a plea entered pursuant to *North Carolina v. Alford*, which allows a defendant to be sentenced as if they had entered a guilty plea without actually admitting guilt. *North Carolina v. Alford*, 400 U.S. 25, 37, 27 L. Ed. 2d 162, 171 (1970).

To preserve appellate review of excluded evidence, a formal or informal offer of proof must be made, unless the significance of the evidence is obvious from the Record. *State v. Jacobs*, 363 N.C. 815, 818, 689 S.E.2d 859, 861 (2010). "[A] formal offer of proof is made when counsel calls the witness[] to provide [her] proposed testimon[y] at the hearing." *State v. Martin*, 241 N.C. App. 602, 605, 774 S.E.2d 330, 333 (2015) (emphasis omitted). A formal offer of proof must show the "essential content or substance" of the excluded evidence to determine whether the evidence's exclusion was prejudicial. *Currence v. Hardin*, 296 N.C. 95, 100, 249 S.E.2d 387, 390 (1978). When a party fails to make a formal offer of proof, an informal offer of proof suffices if counsel "represent[s] to the [trial] court the content of the testimon[y the] witness[] would provide." *Martin*, 241 N.C. App. at 605, 774 S.E.2d at 333. Again, the question becomes whether the "essential content or substance of the excluded testimony" is communicated to preserve the right of appeal. *State v. Walston*, 229 N.C. App. 141, 145, 747 S.E.2d 720, 724 (2013), *rev'd on other grounds*, 367 N.C. 721, 766 S.E.2d 312 (2014). Additionally, when a formal or informal offer of proof is absent, the issue can be preserved if "the significance of the evidence is obvious from the [R]ecord." *State v. Hester*, 330 N.C. 547, 555, 411 S.E.2d 610, 615 (1992) (citing *State v. Simpson*, 314 N.C. 359, 370, 334 S.E.2d 53, 60 (1985)). Outside of these bases of preservation, "we can only speculate as to what [a witness's testimony] would have

been." *State v. Barton*, 335 N.C. 741, 749, 441 S.E.2d 306, 310-11 (1994) (alterations omitted).

Mindy was never called to provide her anticipated testimony, and as a result no formal offer of proof was ever made. However, when discussing Mindy's *Alford* plea, Defendant stated:

> It's a guilty plea with an asterisk, one in which she is clearly an interested party. She has been granted quasi immunity in exchange for her testimony. And she in one breath says I've pled guilty to this. But this case relies on an understanding of all of these nuances and all of these distinctions. And in a situation where she came before the Court and pled guilty with an asterisk pursuant to [*Alford*] in a situation where she pled guilty but didn't actually admit her guilt, I think that's absolutely relevant to the defense in this case.

Defendant's statement is insufficient as an informal offer of proof because Defendant failed to provide a "specific forecast of what the testimony would be." *Walston*, 229 N.C. App. at 145, 747 S.E.2d at 724. Instead, Defendant simply argued for its admission as relevant evidence. Defendant failed to present the purpose for the evidence and its application with any particularity, but rather only broadly asserts its inclusion was needed. *See Martin*, 241 N.C. App. at 606, 774 S.E.2d at 333 ("A 'specific forecast' would typically include the substance of the testimony[,] as opposed to merely stating what he plans to ask the witness[], the basis of the witness'[s] knowledge, the basis for the attorney's knowledge about the testimony, and the

attorney's purpose in offering the evidence. The informal offer should be made with *particularity* and not be made in a summary or conclusory fashion.").

The only remaining basis for preservation is if the significance of Mindy's *Alford* plea is obvious from the Record. Before the State's objection, Defendant began to cross-examine Mindy on whether she "actually plead guilty" when she appeared before the court previously, and when arguing for the admission of this evidence Defendant made clear he intended to show "she pled guilty but didn't actually admit her guilt." In this case, it is obvious from the Record Defendant intended to elicit testimony that described Mindy's *Alford* plea. The significance of her *Alford* plea is obvious from the Record. Her *Alford* plea is contained in the Record in her *Transcript of Plea*, which required her to testify against Defendant to get the benefit of her plea. Further, Mindy's inconsistencies regarding Defendant's abuse of Isabel are contained in the Record. From these sections of the Record, it is obvious Defendant's counsel was seeking to inquire about her *Alford* plea, in which she accepted guilt for sentencing purposes without actually capitulating guilt, in order to suggest she was only testifying against Defendant for her own benefit and to cast doubt on her testimony Defendant committed these acts. Defendant could argue because she did not admit her involvement in the abuse, her claim that Defendant engaged in that same abuse is undermined. Given the obvious significance of the testimony from the

Record, Defendant's challenge to the exclusion of Mindy's testimony about her *Alford* plea is preserved for review.

**2. Exclusion Under Rule 401 and Rule 403**

In ruling on the exclusion of the *Alford* plea, the trial court stated, "[f]irst, I don't find it's relevant. And, second, to the extent it is relevant, I find it does not survive the balancing test." First, I address the relevance determination, then the subsequent balancing test in light of the relevance determination.

> Although the trial court's rulings on relevancy technically are not discretionary and therefore are not reviewed under the abuse of discretion standard applicable to Rule 403, such rulings are given great deference on appeal. . . . Because the trial court is better situated to evaluate whether a particular piece of evidence tends to make the existence of a fact of consequence more or less probable, the appropriate standard of review for a trial court's ruling on relevancy pursuant to Rule 401 is not as deferential as the abuse of discretion standard which applies to rulings made pursuant to Rule 403.

*Dunn v. Custer,* 162 N.C. App. 259, 266, 591 S.E.2d 11, 17 (2004) (internal citation and marks omitted). "Abuse of discretion results where the [trial] court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Hennis,* 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988).

"All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of North Carolina, by Act of Congress, by Act of the General Assembly or by these rules. Evidence which is not

relevant is not admissible." N.C.G.S. § 8C-1, Rule 402 ("Rule 402") (2019). "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.G.S. § 8C-1, Rule 401 (2019). "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C.G.S. § 8C-1, Rule 403 (2019).

Even giving the trial court great deference, its finding that the evidence of Mindy's *Alford* plea was not relevant was error. Testimony related to Mindy's *Alford* plea would have shown Mindy maintained her innocence despite accepting a guilty plea. *See State v. Alston,* 139 N.C. App. 787, 792, 534 S.E.2d 666, 669 (2000) (an *Alford* plea allows a "defendant [to] enter a guilty plea while continuing to maintain his or her innocence"). By maintaining her innocence, she effectively refused to admit the events alleged actually occurred. Mindy's refusal to admit the events alleged actually occurred, which she testified Defendant participated in, has a tendency to make the existence of a fact of consequence—that Defendant actually abused Isabel— less probable than it would be without the evidence. Therefore, by definition, this evidence was relevant. Although abuse of discretion is not the standard of review here, the ruling finding the evidence not relevant is manifestly unsupported by

reason, and thus would even satisfy the abuse of discretion standard. As a result, under the great deference standard of review given to Rule 401 relevancy determinations, which is less deferential than abuse of discretion, I would find this relevancy determination to be error.

The trial court proceeded to conduct a Rule 403 analysis after having found the evidence was not relevant under Rule 401. Conducting a Rule 403 analysis of evidence that is not relevant is unnecessary and improper as this evidence is inadmissible under Rule 402. N.C.G.S. § 8C-1, Rule 402 (2019). To the extent the trial court excluded the evidence based on a Rule 403 balancing test, I would find an abuse of discretion.

Despite being unnecessary, the Rule 403 balancing test here was improper as the trial court did not believe the evidence was relevant at all. Therefore, the trial court's analysis under Rule 403 evaluated whether the evidence that it assigned no relevance to was substantially outweighed by any of the Rule 403 factors. A piece of evidence assigned no relevance could never survive a Rule 403 balancing test. Accordingly, the trial court excluded the evidence. However, as explained above, the evidence is in fact relevant, making the balancing test as conducted improper. To weigh the evidence here as having no relevance is manifestly unsupported by reason, and thus is an abuse of discretion, as Mindy's denial of the events underlying her felony child abuse charge clearly makes a fact of consequence—whether or not the

sexual assault by Defendant actually occurred—less likely to have occurred. To the extent the trial court excluded the evidence based on Rule 403, the trial court abused its discretion.

**3. Prejudicial Error**

Despite the erroneous exclusion of Mindy's testimony regarding her *Alford* plea, in order to reverse we must find the exclusion was prejudicial. "A defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C.G.S § 15A-1443(a) (2019). "The exclusion of evidence constitutes reversible error only if the appellant shows that a different result would have likely ensued had the error not occurred. . . . The burden is on the appellant not only to show error, but to show *prejudicial* error . . . ." *Latta v. Rainey*, 202 N.C. App. 587, 603, 689 S.E.2d 898, 911 (2010) (internal marks and citations omitted). Here, Defendant has not shown "that a different result would have likely ensued had the error not occurred." *Id.*

Defendant argues the exclusion of evidence was prejudicial because the additional evidence would undermine Mindy's credibility and allow jurors to consider alternative perpetrators of the crimes against Isabel. However, in Mindy's testimony, she stated: she was getting a benefit for her testimony in the form of a reduced charge;

initially she told DSS Defendant did not, and would not, commit the crimes charged; as a child and an adult she was sexually assaulted by her father whom she and Isabel lived with at multiple points; and Isabel had told her mother she was sexually assaulted by her mother's boyfriend at the time. Thus, the evidence otherwise introduced showed Mindy had said Defendant did not commit the crimes on multiple occasions, there were other potential perpetrators of the crime, and she was testifying in exchange for a benefit.

Additionally, immediately after excluding the evidence of Mindy's *Alford* plea, the trial court gave an instruction addressing the benefit she was receiving in exchange for her testimony:

> There is evidence which tends to show that a witness testified or is testifying under an agreement with the prosecutor for a charge reduction in exchange for testimony. If you find that the witness testified for this reason in whole or in part, you should examine this testimony with great care and caution. If, after doing so, you believe the testimony in whole or in part, you will treat what you believe the same as any other believable evidence.

This instruction partially addressed Defendant's concerns related to the credibility of Mindy. Also, as discussed above, the other evidence presented showed there were other potential perpetrators of the crime to consider and Mindy initially denied Defendant's involvement.

In light of this, Defendant has not shown "that a different result would have likely ensued had the error not occurred." *Latta*, 202 N.C. App. at 603, 689 S.E.2d at

911. The jury considered evidence that could establish everything Defendant argues he was robbed of as a result of the trial court excluding the evidence of the *Alford* aspect of Mindy's plea. The trial court did not commit prejudicial error in excluding this evidence.

## B. Defendant's SBM Order

Defendant also challenges the trial court's order subjecting him to lifetime SBM without first holding a *Grady* hearing to determine whether the order was reasonable under the Fourth Amendment. Defendant entered oral notice of appeal for his criminal judgements; however, SBM orders are civil and therefore cannot be appealed by this method. *See Brooks*, 204 N.C. App. at 194-95, 693 S.E.2d at 206 ("In light of our decisions interpreting an SBM hearing as not being a criminal trial or proceeding for purposes of appeal, we must hold that oral notice pursuant to N.C. R. App. P. 4(a)(1) is insufficient to confer jurisdiction on this Court. Instead, a defendant must give notice of appeal pursuant to N.C. R. App. P. 3(a) . . . ."). Defendant concedes he failed to properly appeal this issue under Rule 3 and requests we grant his *Petition for Writ of Certiorari* to enable review of the SBM order. Although he does not acknowledge it, Defendant also asks us to reach the merits of this issue despite failing to preserve it due to his failure to object to it on constitutional grounds at trial. *See State v. Bishop*, 255 N.C. App. 767, 805 S.E.2d 367 (2017). To reach this issue, we would have to grant Defendant's *Petition for Writ of Certiorari* to hear the untimely

appeal, as well as invoke Rule 2 to waive his failure to preserve the issue at trial. I would decline to do so.

"If this Court routinely allowed a writ of certiorari in every case in which the appellant failed to properly appeal, it would render meaningless the rules governing the time and manner of noticing appeals." *Bishop*, 255 N.C. App. at 769, 805 S.E.2d at 369. Further, "[i]t is well settled that an error, even one of constitutional magnitude, that [a] defendant does not bring to the trial court's attention is waived and will not be considered on appeal." *State v. Wiley*, 355 N.C. 592, 615, 565 S.E.2d 22, 39 (2002). This is equally true when applied to Fourth Amendment arguments under *Grady* as it relates to an SBM order. *Bishop*, 255 N.C. App at 769-770, 805 S.E.2d at 369-370. Further,

> Rule 2 relates to the residual power of our appellate courts to consider, in exceptional circumstances, significant issues of importance in the public interest or to prevent injustice which appears manifest to the Court and only in such instances. . . . This assessment—whether a particular case is one of the rare instances appropriate for Rule 2 review— must necessarily be made in light of the specific circumstances of individual cases and parties, such as whether substantial rights of an appellant are affected. . . . In simple terms, precedent cannot create an automatic right to review via Rule 2. Instead, whether an appellant has demonstrated that his matter is the rare case meriting suspension of our appellate rules is always a discretionary determination to be made on a case-by-case basis.

*State v. Campbell*, 369 N.C. 599, 603, 799 S.E.2d 600, 602-03 (2017) (internal citations, marks, emphasis, and footnote omitted). Defendant's failure to properly

preserve and appeal the imposition of SBM without a *Grady* hearing is without excuse, and the facts of this case do not warrant the grant of Defendant's *Petition for Writ of Certiorari* or our invocation of Rule 2 to review this issue. "In consideration of the 'specific circumstances' of this case, *and only this case*, I reach the same result as the Majority and [would] choose [not] to [grant Defendant's *Petition for Writ of Certiorari* or] exercise our Rule 2 discretion . . . ." *State v. Ennis*, 848 S.E.2d 311 (Table), COA 19-896, 2020 WL 5902804, *11, (N.C. Ct. App. 2020) (unpublished) (Murphy, J., *concurring in part and concurring in result only in part*). Having denied Defendant's *Petition for Writ of Certiorari*, I would dismiss this issue for lack of jurisdiction.

## CONCLUSION

I would find that although the trial court erred by excluding relevant evidence concerning victim's mother's *Alford* plea under Rule 401 and Rule 403, this error was not prejudicial in this case. Additionally, due to Defendant's failure to properly preserve and appeal his SBM order, I would deny his *Petition for Writ of Certiorari*, leaving his appeal on this basis without jurisdiction.